## Case No. 11,162.

### PIKE v. POTTER.

[3 Fish. Pat. Cas. 55.] ¹

Circuit Court, D. Rhode Island. July, 1859.

PATENTS—PROCESS — EXTENDING GRANT BEYOND INTENTION OF PARTIES—CORRESPONDENCE BETWEEN INVENTOR AND PATENT OFFICE AS EVIDENCE — PROPOSITION NOT ACCEPTED BY COMMISSIONERS.

1. The invention of John C. Schooley, as set forth in his patent of March 13, 1855, for "improvement in processes for curing meats," is not for a machine, but for a process or method of curing meats and preserving fruits and provisions by means of circulating currents of air, artificially dried by ice or its equivalent, through the room where the curing takes place, substantially as set forth in the specification.

2. If the patent was issued by the commissioner upon an agreement by the patentee that it should not extend to certain articles, it would be a fraud upon the government to extend the grant beyond the original intention of the parties.

3. The correspondence between the office and the patentee is evidence, at least in a court of

---

¹ [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

equity, for the purpose of showing the limitation placed by the patentee upon his claims.

4. If a patent claiming the invention of a process applicable to pork houses and also to domestic refrigerators, can not, for want of novelty, be extended to the former, it can not be extended to the latter.

5. A proposition to limit the claim made by the patentee to the commissioner, but not accepted by the latter, does not bind the patentee.

6. If a process of curing meats designed for pork houses be applicable, without substantial variation, to domestic refrigerators, then it can not be used by others in domestic refrigerators without infringing the patent.

7. The patentee is not obliged to state everything to which his invention is applicable in order to be protected in the enjoyment of the exclusive right to such things.

This was a trial before Judge Pitman and a jury, of issues of fact, arising in a suit in equity brought to restrain the defendant [Asa K. Potter] from infringing upon letters patent [No. 12,530], for an "improvement in processes for curing meats," granted to John C. Schooley, March 13, 1835, and assigned to complainant [Charles F. Pike]. The patent described a pork house constructed with two compartments, in one of which was placed the meat to be cured or preserved, and in the other a quantity of ice. These compartments communicated with each other, and each, by openings, with the external air. The air passing over the ice was cooled and dried and descended into the apartment containing the meat, from which it took up heat and moisture, and rising, passed out by the external opening, thus creating a circulation in which cold and dry air was continually introduced into the provision-chamber, and warm and moist air was continually expelled. The claim of the patent was as follows: "The process of curing meat, and preserving fruit and provisions, by means of circulating currents of air artificially dried by ice, or its equivalent, through the room wherein the curing takes place, substantially as and for the purposes set forth." The defendant was charged with using the process, in domestic refrigerators of the ordinary size, but constructed with two compartments and employing a circulation substantially the same as that described in Schooley's patent.

W. H. Potter, C. M. Keller, and B. R. Curtis, for plaintiff.

A. Payne, J. S. Beach, and T. A. Jenckes, for defendant.

PITMAN, District Judge. The object of the patent laws is to secure to inventors the exclusive right, for a definite period, to their inventions and discoveries. To enable a person to obtain a patent, he must make application to a commissioner, and deliver to him a written description of his invention or discovery, so carefully explained as to enable others, skilled in the art or science to which it appertains, to make, construct, compound, and use the same; and in case of any machine, he must explain the principle, and the several modes of its application, so as to distinguish it from other inventions, and shall particularly specify the part or combination which he claims as his invention or discovery. This specification is annexed to, and is made part of, the patent. What the patent is for, is ascertained by the construction of the language of the specification by the court; and it is the duty of the court to give it such a liberal construction as will secure to the inventor the exclusive right to his invention and discovery as stated and described in the specification.

In this case, as his specification states, the invention of Mr. Schooley is not for a machine, but for a process or method of curing meats, and preserving fruit and provisions by means of circulating currents of air, artificially dried by ice or its equivalent, through the room where the curing takes place, and substantially as set forth in this specification, and for the purposes therein stated.

I have no doubt of what the invention is, or that it is sufficiently described. It is stated in the specification that the improvement "is particularly applicable to the construction of pork houses, for the purpose of curing meats in the summer season," etc., and it is contended by the defendant that it is for nothing else. It is so contended, not only from the language of the specification, but also from the correspondence between the commissioner and Mr. Schooley, from which it appears that the commissioner refused to grant a patent under the original specification, because it had already been discovered as applicable to domestic refrigerators, and that Mr. Schooley then agreed that his patent should only be for curing meats in pork houses, as described in the specification, and an offer was made to produce the correspondence. It was objected to by the plaintiff, but I admitted it on the ground that if the patent was issued with such an agreement (not to extend it to domestic refrigerators), to extend it to domestic refrigerators would be a fraud upon the government, and extend their grant beyond what was the original intention of the parties; and if at law such evidence is not admissible, certain I am that a court of equity would not grant an injunction in the face of such evidence. The testimony, therefore, has been admitted by me, and the question is whether it proves that the commissioner refused to grant this patent because it was claimed to be applicable to domestic refrigerators; and whether Mr. Schooley admitted that he had no right to extend it to domestic refrigerators, for want of novelty in that department, and that he obtained the grant with that understanding, and that it ought not to be extended to domestic refrigerators, it is obvious, and it must be apparent to all lawyers, that if it could not, for

want of novelty, be extended to domestic refrigerators, it could not be extended to pork houses; and that may help us somewhat in the construction of this correspondence.

An application was made (as appears from the letter that accompanied it), on January 19, 1855; and this letter states that it was "an application for an improvement in curing meats and for preserving all kinds of fruits and provisions," and this is so stated in the first specification of Mr. Schooley. This specification is almost verbatim, like the one annexed to the patent, in all those parts that have been criticised by the defendant as going to show that the patent was granted only for curing as described in the one for pork houses, and it contains this clause: "My improvement is applicable to ice chests and refrigerators of any and every form heretofore invented, and is particularly applicable to pork houses, for the purpose of curing meats," etc. The words "is applicable to ice chests and refrigerators of any and every form heretofore invented," are not to be found in the new specification; but they have been stricken out as appears from the evidence, or rather, lines have been drawn through them, and the phrase is left now "is particularly applicable to the construction of pork houses."

On February 2, 1855, a letter was written from the patent office, and signed by the commissioner of patents, to Mr. Schooley, in which he says: "Your application for alleged improvement in apparatus for preserving meats, etc., has been examined and is found not to contain any patentable novelty. For substantially the same device, you are referred to the application of Thaddeus Fairbanks for a refrigerator, rejected February 26, 1847, and withdrawn September 6, 1847, and also the application of A. S. Lyman, for a patent for a disinfecting ventilator, rejected February 27, 1854." It appears that the application of Lyman was for ventilators and refrigerators, and more particularly for refrigerators. It is apparent from this letter, that their refusal to grant a patent to Mr. Schooley, as applied for, was not because he had stated in his specification that his patent was applicable to ice-chests and refrigerators of every form; but because the same device was found in the application referred to, and therefore contained no patentable novelty, and of course it was the duty of the commissioner to refuse the patents, if such was his opinion.

The answer of Mr. Schooley, by his attorney, Mr. Stoughton, is an argument to show that this was not true, and after an attempt to convince the commissioner of error, he says: "To remove all difficulties on the part of the office, I propose, on the accompanying sheet of amendments, to erase, for the present, from the specifications, all allusions to refrigerators or ice-boxes, but to reserve to myself the right to renew my claim to those under a new application at some future day. My invention will then rest upon what can not be called either a refrigerator or an ice-box."

This is not an admission that his invention can not be extended to refrigerators, on the ground that the same device had already been used, but a denial of this, and a proposition to say nothing about them in his specification, provided that the patent would be granted to him. This proposition was made, he says, "to remove all difficulty on the part of the office;" but this proposition did not remove all difficulties on the part of the office, for the difficulty was not that the specification had been extended to refrigerators, but that the device substantially existed before, and of course was not a novelty; but so far was this from satisfying the office, that in the letter of the commissioner, dated February 22, 1855, he says: "Upon examination, etc., it is still found that your claim covers the device of A. S. Lyman, with the only addition and difference," etc. The difference I will not remark upon, it is not material, whatever may be the opinion of the court; whether there would be a substantial difference or not is of no importance; it seems to have been waived by the opinion of the office afterward. "Currents of air," he says, "produced are no novelty, as is proven by the remarks filed by yourself on the 19th instant (I will observe that I could find no such admission, and therefore there was no such evidence as affecting Mr. Schooley), and therefore all to which you could be admitted to have a claim, provided the device proves new upon further examination, would be for a process of curing meats by means of circulating currents of air, artificially dried by ice, after it is admitted through the room where the curing takes place, substantially as and for the purposes set forth."

As a patent was granted, the office upon further examination, must have been satisfied that the device claimed by Mr. Schooley was new, and the patent was not simply for curing meats, but also for preserving provisions and fruits, as originally claimed.

In the letter of February 14, 1855, of Mr. Stoughton, for John C. Schooley, he says: "I have the honor to acknowledge the receipt of your letter of the 22d (February), returning the specification of John C. Schooley, for corrections, as suggested. I have to request that the following amendments may be substituted for those presented in my letter of the 16th instant." It will be found that those go far beyond what was stated by the commissioner in his letter of February 22, as to what Mr. Schooley would be entitled to; instead of being a process for curing meat only, it is a "process for curing meats, fruits, and other provisions, by means of circulating currents of air artificially dried by ice or its equivalent, through the room wherein the curing takes place." And then in the claim, having given a full description, he

says: "What in my invention I claim as new, and desire to claim, is a process for curing meats and preserving fruits and provisions by means of currents of air, artificially dried by ice or its equivalents, through the room wherein the curing takes place," which is precisely, I think, as stated in the specification now produced. It is true that Schooley's attorney made the statement that Schooley's improvement, as applicable to ice-chests and refrigerators, was stricken out from the original specification; but was this an admission that it was not applicable to ice-chests and refrigerators? When it was stricken out, does not plainly appear, but I think it must be inferred that it was when he first proposed it, with a view to suit the office and to procure a patent, which, without inserting these words, would, in law, extend to refrigerators, if in fact the invention was applicable to refrigerators. The striking out or inserting of a fact that the improvement was applicable to refrigerators, could not affect the invention particularly. It would rather seem to me to be a device of the attorney, with a hope thereby to overcome the objections of the commissioner.

It is true it is said that the claim will be reserved for a future day, and if this proposition had been then accepted, and the patent granted upon this understanding, there might be some reason to estop Mr. Schooley; but the patent was granted because the office was satisfied that the invention of Schooley to cure meats and preserve fruits and provisions was new, and whether in fact it was applicable to domestic refrigerators, was a question of law depending upon the fact whether it was applicable to domestic refrigerators.

If Mr. Schooley is the inventor of the devices set forth in this patent, and it is applicable to domestic refrigerators, then to protect him in the rights secured to him by the patent, that is, to secure to him a monopoly of this new mode of curing meats and preserving fruits and provisions, as stated in this specification, no person could be allowed to use it in any domestic refrigerator without infringing upon the patent.

It is true that Mr. Schooley afterward made application for a patent to preserve fruits and provisions and other things, in which he sets forth the same mode; and this was shortly after the patent was granted, and no doubt under the advice that if he could obtain such a patent, it would remove all difficulty.

There is no doubt also, that Mr. Schooley had this in contemplation, from what is stated in the original specification, viz: that it was applicable, and he intended to make it applicable, to domestic refrigerators. It is not, therefore, an after-thought on his part, and the application was made as particularly applicable to domestic refrigerators alone, and to portable refrigerators; while the other one was more particularly applicable to pork houses. This latter application was refused by the commissioner, because he had already obtained a patent for the same process as applicable to the curing of meats, and that he could not have two patents for the same process because for different purposes. If, therefore, there has been any fraud, it seems to be a fraud on Mr. Schooley. If there was an agreement, as there was according to the line of argument on the side of the defense, between him and the commissioner, that he should reserve this for a future application, and therefore that it was to be left out of that patent, and the application was made a very short time afterward and refused, because he had already given him a patent for the same process, it would seem to be a fraud on Mr. Schooley; but I do not understand that there was an agreement of this kind between the commissioner and Mr. Schooley. It would be so understood if the objection to granting the patent had been because it had been made applicable in the specification to domestic refrigerators, but it was because it contained no patentable novelty. Therefore, the question is now what this patent is for, and we must decide that upon the construction of the language of the specification itself; it is not to be controlled by this correspondence. I admitted it, with great doubts, but I thought if it was so clear as was stated when it was offered, that I did not see well how I could refuse to admit it. It is so inconclusive, however, that it can not control what appears upon the face of the patent itself.

Again, there is no doubt in my mind, that the invention is fully set forth in the specification; and if that is in fact applicable to domestic refrigerators, then it can not be used in domestic refrigerators by others without infringing upon the rights of the patentee. If the patent avers the invention of Mr. Schooley, it is then for the court and jury to say whether this is an infringement (by Mr. Winship) upon that invention, and that is the question which is sent here to be tried.

I feel one satisfaction, at least, in thus determining; that I do not cut the case short, but leave the questions of novelty and infringement to be tried by the jury. I am satisfied as to what the invention is, and that the patent does sufficiently cover the invention. For me to say that it shall not extend to domestic refrigerators when it may extend to domestic refrigerators, would be stultifying myself, and doing violence to the rights of the parties. The case, therefore, must proceed.

The charge of the court to the jury was in accordance with the foregoing opinion. A single paragraph only is here inserted:

PITMAN, District Judge (charging jury). * * * It was suggested, that although this invention might have previously existed in reference to refrigerators, yet, as ap-

plicable to a pork house, it might be the subject of a patent. I think otherwise, gentlemen, and so I think did the commissioner, who refused the patent at first, because known, as he supposed. in refr'gerators, and granted it afterward, as he must have been satisfied, upon further examination, that it was not so. You are therefore to consider this as a patent for a mode of curing meat and preserving fruits and provisions by means of ice, as stated and specified in the specification of the patent, whatever form or structure of boxes may be used, if the same thing that is described in Mr. Schooley's patent is done in substantially the same way. It is not denied that Mr. Schooley is the inventor of a new method as applicable to pork houses, but his patent goes beyond this; he states that it was particularly applicable to pork houses, which is an inference that it was applicable to other things. He was not obliged to state everything to which it is applicable, in order to be protected in the enjoyment of the exclusive right to everything to which it is applicable, as a mode of curing meats and preserving provisions substantially in the mode described.